Charlotte STRICKLAND *v.* PRIMEX TECHNOLOGIES, *et al.*

CA 02-778                                                    120 S.W.3d 166

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered June 25, 2003

*Robert L. Depper, Jr.*, for appellant.

*Shackleford, Phillips, Wineland & Ratcliff, P.A.*, by: *Norwood Phillips*, for appellees.

JOHN MAUZY PITTMAN, Judge. The appellant in this workers' compensation case filed a claim for benefits asserting that she contracted an occupational disease while employed by appellee Primex Technologies. The Commission denied her claim on the basis of its finding that she failed to give the statutorily-required written notice to her employer within ninety days of

the time she first knew or should have known that she had contracted an occupational disease. For reversal, appellant contends that the Commission erred in finding that her failure to give notice of an occupational disease was not excused. We affirm.

■ ■ Arkansas Code Annotated § 11-9-603(a)(2)(A) (Repl. 2002) provides that written notice of an occupational disease shall be given to the employer by the employee, or someone on his behalf, within ninety days after the first distinct manifestation thereof. We have held that the ninety-day statutory period does not begin to run until the employee knows or should reasonably be expected to know that he is suffering from an occupational disease. *See Quality Service Railcar v. Williams*, 36 Ark. App. 29, 820 S.W.2d 278 (1991). Furthermore, failure to give notice shall not bar any claim if the employer had knowledge of the injury; if the employee had no knowledge that the condition or disease arose out of and in the course of his employment; or if the Commission excuses the failure on the grounds that, for some satisfactory reason, the notice could not be given. Ark. Code Ann. § 11-9-701(b)(1) (Repl. 2002).

■ In the present case, appellant became ill at work after exposure to aluminum powder in October 1998, but never provided her employer with anything that could be considered written notice until March 2000. The Commission found that appellant knew or should have known in October 1998 that she was suffering from an occupational disease. This is borne out by the October 14, 1998, report of appellant's physician, Dr. Sarnicki, to the effect that appellant was apparently exposed to aluminum dust and that her condition resolved after she was removed from exposure to it. In addition, the Commission relied on testimony by the appellant indicating that she knew that her claim was cognizable under workers' compensation in October 1998. The Commission also found credible and relied on the testimony of Sharon Lemons of Primex's personnel department, who stated that appellant asked her to file a disability claim for appellant following the incident, but never informed Lemons that appellant's condition was related to exposure to aluminum dust or asked her to file a worker's compensation claim relating to the

aluminum dust incident.[1] The issue is therefore one of credibility, and we have frequently recognized that it is the function of the Commission, and not of this court, to determine credibility of witnesses and the weight to be given their testimony. *Horticare Landscape Management v. McDonald*, 80 Ark. App. 45, 89 S.W.3d 375 (2002). Questions of weight and credibility are, instead, within the sole province of the Workers' Compensation Commission, which is not required to believe the testimony of the claimant or of any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Wal-Mart Stores, Inc. v. Sands*, 80 Ark. App. 51, 91 S.W.3d 93 (2002); *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002).

██ Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Emerson Electric v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001). Viewing the evidence, as we must, in the light most favorable to the Commission's findings and giving the testimony its strongest probative force in favor of the action of the Commission, *id.*, we think that reasonable minds could conclude that appellant knew in October 1998 that she suffered from an occupational disease, but that appellee did not know that appellant suffered from an occupational disease, and we therefore must affirm.

Affirmed.

STROUD, C.J., and ROBBINS and NEAL, JJ., agree.

GLADWIN and BAKER, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. Appellant suffers from an occupational disease, and appellees do not dispute that her condition was caused by her employment. They merely claim that she is prevented from recovering benefits because she failed to give written notice to her employer that she was suffer-

---

[1] As the dissent notes, Ms. Lemons did subsequently assist appellant in filing a claim for compensation, but this claim related to a separate incident that took place on October 27, 1999, over one year after appellant learned that she suffered from a compensable occupational disease.

ing from an occupational disease within ninety days of the first manifestation of the disease and that her failure was not excused.

In this case, the Commission found that the employee should have been aware that her disease was occupational, but, at the same time, found that the employer did not have sufficient knowledge of the causal connection between appellant's work and her disease to excuse the notice requirement. Under the facts of this case, these two simultaneous findings are irreconcilable.

The Commission found that appellant knew or should reasonably be expected to be aware of the extent or nature of her injury in October 1998. On October 5, appellant's treating physician diagnosed "questionable reactive airway disease secondary to environmental exposure." On October 7, the doctor noted: "There is some question of whether it is located at her work that it may be causing her to have some wheezing and shortness of breath episodes." Then on October 14: "She is apparently exposed to aluminum dust and upon removal that resolved." Appellant remained off work four or five weeks after this exposure to the aluminum dust.

The employer's human resource director testified that she was responsible for processing workers' compensation claims, insurance, and other paper work related to employees' injuries and illnesses. She stated that when appellant was off work for the five weeks, she filed an illness report and she understood that appellant was ill with bronchitis-type symptoms. She also helped appellant fill out her disability form, which she believed was appropriate, related to appellant's condition. Then in 1999, she filed another illness report. The doctor's report at that time said that appellant's condition was work related, so she filed a worker's compensation claim on behalf of appellant.

Our analysis must focus upon whether the employee had knowledge that she had a claim cognizable under workers' compensation law. *See Desoto, Inc. v. Parsons*, 267 Ark. 665, 590 S.W.2d 51 (Ark. App. 1979) (employee had not been in position to give notice of injury because she had not been aware, until notified by her union, that she had a claim cognizable under

Workers' Compensation Law and that employer and carrier had not been prejudiced by failure of notice).

In this case, both the employee and the employer were aware of the employee's physical impairment in October of 1998, and the employer assisted the employee in completing the necessary insurance forms and documentation concerning her disability. As the employer's human resource director testified, when she filed the subsequent illness report in 1999, the doctor's report said the employee's condition was work related so she filed a worker's compensation claim. On these facts, either the employer and the employee both had knowledge that the injury was work related, or neither had knowledge. I would reverse.

GLADWIN, J., joins.