Wendy A. COLLINS *v.* EXCEL SPECIALTY PRODUCTS
and Crawford & Company

01-820                                        69 S.W.3d 14

Supreme Court of Arkansas
Opinion delivered March 7, 2002

*Stephen M. Sharum*, for appellant.

*Hardin, Jesson & Terry, PLC*, by: *J. Rodney Mills* and *J. Leslie Evitts, III*, for appellees.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Wendy Collins, appeals from the decision of the Workers' Compensation Commission (hereinafter Commission) denying appellant's claim. The Commission adopted the Administrative Law Judge's decision finding that appellant was not performing employment services at the time of her injury. The court of appeals, in a 6–3 decision, reversed and remanded this case to the Commission for further consideration of appellant's claim in light of the court's recent decision in *Matlock v. Arkansas Blue Cross Blue Shield*, 74 Ark. App. 322, 49 S.W.3d 126 (2001). *Collins v. Excel Spec. Prod.*, 74 Ark. App. 400, 49 S.W.3d 161 (2001). Appellee Excel Specialty Products petitioned this Court for review from the court of appeals's decision reversing the Workers' Compensation Commission. We granted the petition for review. We reverse and remand the Commission's decision, thereby affirming the court of appeals.

## I. Standard of Review

■ ■ Upon a petition for review, we consider a case as though it had been originally filed in this Court. *Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000); *Maxey v. Tyson Foods, Inc.*, 341 Ark. 306, 18 S.W.3d 328 (2000); *Woodall v. Hunnicutt Construction*, 340 Ark. 377, 12 S.W.3d 630 (2000); *White v. Georgia-Pacific Corporation*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). We view the evidence in a light most favorable to the Commission's decision, and we uphold that decision if it is supported by substantial evidence. *Id.*; *Deffenbaugh Indus. v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Pickett*, 336 Ark. 515, 988 S.W.2d 3; *ERC Contr. Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998).

## II. Summary of Facts and Procedural History

Appellant was employed with appellee, Excel Specialty Products, as a production worker. Her job consisted of carving blocks of beef into beef steaks of sizes by weight as specified by her employer. Her production work included incentive pay for a certain production quota, and the employees on her production line were required to clock in and out on a time clock. Appellant and her co-workers were given fifteen-minute breaks in the morning and in the afternoon and a thirty-minute lunch break.

On November 2, 1999, sometime between the morning break and the lunch break, appellant left the production line to go to the bathroom for the purpose of urination. Between the production line and the restroom, appellant suffered a fall sustaining a fracture to her right wrist and arm.

The Administrative Law Judge denied appellant's claim reasoning as follows:

> In the present case, the circumstances surrounding the claimant's alleged injury are not in dispute. The claimant testified that the respondent allowed employees to leave the line and go to the restroom whenever necessary and without "clocking out." She stated that the alleged accident and injury occurred after she had

left her work station and while she was actually on her way to the restroom to relieve herself.

Clearly, at the time of her alleged accident and injury, the claimant was not engaged in the performance of any employment tasks which she had been specifically assigned by her employer, nor was she engaged in any activity which would directly benefit or advance the interests of her employer. Nor would her actions be considered inherently necessary for the performance of her required tasks. At most, her actions would only indirectly benefit her employer. Under the Court's ruling the *Harding v. City of Texarkana*, 62 Ark. App. 137, 970 S.W.2d 303 (1998), this is not sufficient to case the activity to be considered "employment services."

Based upon existing precedent, I am compelled to find that the claimant's alleged accident and injuries occurred at a time when she was not performing "employment services" as required by Ark. Code Ann. § 11-9-102(4)(B)(iii). Therefore, her alleged injury cannot be considered a "compensable injury" within the meaning of the Act.

As previously stated, the Commission adopted the Administrative Law Judge's decision and the court of appeals reversed and remanded the case for further consideration in light of *Matlock, supra*. We agree with the court of appeals that the case must be reversed and remanded; however, we hold that the Commission erred in this case in denying benefits to appellant.

### III. Employment Services

■ The pivotal issue presented by this case is whether, pursuant to Act 796 of 1993, codified at Ark. Code. Ann. §§ 11-9-101, *et seq.* (Repl. 1996, Supp. 2001), appellant was performing employment services when she sustained an injury while on a restroom break at an employer-provided restroom located on the employer's premises.[1] To evaluate appellant's claim and the full Commission's decision, we are called upon to interpret the phrase "in the course of employment" and the term "employment services" as used in

---

[1] Because the issue to be resolved in this appeal is whether appellant was performing employment services at the time of the accident, we need not address the nature and extent of her injuries.

Ark. Code Ann. §§ 11-9-102(4)(A)(i) and 11-9-102(4)(B)(iii) (Supp. 2001). When interpreting a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Edens v. Superior Marble & Glass*, 346 Ark. 487, 58 S.W.3d 369 (2001); *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998).

Act 796 of 1993 made significant changes in the workers' compensation statutes and in the way workers' compensation claims are to be resolved. *White v. Georgia-Pacific Corp., supra*. Claims arising from injuries occurring before the effective date of Act 796 (July 1, 1993) were evaluated under a liberal approach. *Eddington v. City Electric Co.*, 237 Ark. 804, 376 S.W.2d 550 (1964); Ark. Stat. Ann. § 81-1325(b)(4) (Supp.1979). However, Act 796 requires us to strictly construe the workers' compensation statutes. Ark. Code. Ann. § 11-9-704(c)(3); *White v. Georgia-Pacific Corp., supra*. The doctrine of strict construction directs us to use the plain meaning of the statutory language. *Edens v. Superior Marble & Glass, supra*, and *Lawhon Farm Servs. v. Brown, supra*.

Act 796 defines a compensable injury as "[a]n accidental injury . . . arising out of and in the course of employment. . . ." Ark. Code Ann. § 11-9-102(4)(A)(i). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when *employment services* were not being performed. . . ." Ark. Code Ann. § 11-9-102(4)(B)(iii) (emphasis added). However, Act 796 does not define the phrase "in the course of employment" or the term "employment services," *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). It, therefore, falls to this Court to define these terms in a manner that neither broadens nor narrows the scope Act 796 of 1993. Ark. Code Ann. § 11-9-1001 (Repl. 1996). When the meaning of a statutory term is ambiguous, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Stephens v. Arkansas Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000).

Since 1993, we have twice been called upon to construe the statutory language found in sections 11-9-102(4)(A)(i) and 11-9-102(4)(B)(iii). *See White v. Georgia-Pacific Corp., supra,* and *Olsten Kimberly Quality Care, supra*. We have held that an employee is performing "employment services" when he or she "is doing something that is generally required by his or her employer. . . ." *White v. Georgia-Pacific Corp.*, 339 Ark. at 478, 6 S.W.3d at 100. We use the

same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *White v. Georgia-Pacific Corp., supra; Olsten Kimberley, supra.* The test is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *White v. Georgia-Pacific Corp.,* 339 Ark. at 478, 6 S.W.3d at 100 and *Olsten Kimberly, supra.*

██ ██ It is well-settled that any interpretation of a statute by this court subsequently becomes a part of the statute itself. *Night Clubs, Inc. v. Fort Smith Planning Comm'n,* 336 Ark. 130, 984 S.W.2d 418 (1999); *Burns v. Burns,* 312 Ark. 61, 847 S.W.2d 23 (1993). The General Assembly is presumed to be familiar with this court's interpretations of its statutes, and if it disagrees with those interpretations, it can amend the statutes. Without such amendments, however, our interpretations of the statutes remain the law. *Lawhon Farm Servs. v. Brown, supra.; Sawyer v. State,* 327 Ark. 421, 938 S.W.2d 843 (1997). Although aware of our interpretation of the term "employment services" in *White v. Georgia-Pacific Corp.* and *Olsten Kimberley,* the General Assembly has not changed section 11-9-102(4)(A)(i) or section 11-9-102(4)(B)(iii), other than to renumber those sections. *See* 2001 Ark. Acts 1757 and 1999 Ark. Acts 20. Accordingly, this court's interpretation of the pertinent statutory language remains the law.

██ Appellant would have this Court either reaffirm the personal-comfort doctrine[2] or hold that a restroom break is a necessary function and directly or indirectly advances the interests of the employer. Conversely, the appellees contend that an employee is not performing employment services during a restroom break, or any personal break, because the personal-comfort doctrine is not

---

[2] The personal-comfort doctrine states that:

Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

Arthur Larson, *The Law of Workmen's Compensation* § 21 (2001). Prior to Act 796 of 1993, this court adopted the personal-comfort doctrine in workers' compensation cases. *Coleman's Bar-B-Que v. Fuller,* 262 Ark. 645, 559 S.W.2d 714 (1978).

consistent with a strict construction of Act 796. Since the enactment of Act 796, we have not directly addressed the personal-comfort doctrine.[3] To automatically accept a personal-comfort activity as providing employment services would impermissibly broaden the requirements of Act 796. On the other hand, to automatically reject a personal-comfort activity as not providing employment services would impermissibly narrow the requirements of Act 796. Instead of following either extreme position, the critical issue is whether the employer's interests are being advanced either directly or indirectly by the claimant at the time of the injury. In addressing this issue, we decline to adopt the factors identified by the court of appeals in *Matlock v. Blue Cross Blue Shield, supra.*

We note that the activity of seeking toilet facilities, although personal in nature, has been generally recognized as a necessity such that accidents occurring while an employee is on the way to or from toilet facilities, or while he or she is engaged in relieving himself or herself, arise within the course of employment.[4] As the court of appeals reasoned in *Matlock v. Blue Cross, supra:*

> Restroom facilities are provided in work settings because eliminating bodily toxins and wastes are natural and ordinary biological processes. Employers provide restroom facilities for the benefit of their customers, to be sure. But they also provide those facilities to accommodate their workers so as to avoid the work interruptions and delays that would certainly occur if workers were forced to leave the employment premises in order to find a public restroom at some distance from the work, their supervisors, and customers.

*Matlock v. Blue Cross Blue Shield*, 74 Ark. App. at 341–42, 49 S.W.3d at 139. Like the appellant in *Matlock*, Ms. Collins had gone to a restroom provided by her employer when the accident occurred that resulted in her injuries. Her conduct was entirely consistent

---

[3] We disagree with the statement by the court of appeals in *Beavers v. Benton County,* 66 Ark. App. 153, 991 S.W.2d 618 (1999), that "the personal-comfort doctrine is no longer the law." *Id.* at 155. This court agreed in *White v. Georgia-Pacific Corp.* that the claimant's injury was not compensable under the personal-comfort doctrine. *White v. Georgia-Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999). However, we reversed the Commission's decision in that case on the ground that substantial evidence did not support the Commission's determination that the claimant was not performing employment services at the time of his injury. *Id.*

[4] "[T]he wants ministered to are so obviously in the category of necessities that no question arises about their being basically in the course of employment. The only issue on which compensation is sometimes denied is that of seeking these facilities in an unreasonable manner." Arthur Larson, *The Law of Workmen's Compensation* § 21.05 (2001).

with the employer's interest in advancing the work. Everything in the record before us indicates that appellant was engaged in conduct permitted by the employer, if not specifically authorized by the employer, and that the employer provided restroom facilities on its premises.

█ Based on the record in this case, we hold that appellant's restroom break was a necessary function and directly or indirectly advanced the interests of her employer. Consequently, her injury is not excluded from the definition of "compensable injury" under section 11-9-102(4)(B)(iii) because the injury did not occur at a time when she was not performing employment services. The Commission's decision based on an incorrect interpretation of the law must, therefore, be reversed. In so holding, we overrule all prior decisions by the Arkansas Court of Appeals to the extent that they are inconsistent with this opinion.

Reversed and remanded for a determination of benefits.