Charles SMITH *v.* CITY of FORT SMITH

CA 03-530                                     143 S.W.3d 593

Court of Appeals of Arkansas
Division IV and I
Opinion delivered January 28, 2004

*Walker, Shock & Cox, P.L.L.C.*, by: *J. Randolph Shock*, for appellant.

*Daily & Woods, P.L.L.C.*, by: *Douglas M. Carson*, for appellee.

LARRY D. VAUGHT, Judge. Appellant Charles Smith appeals the decision of the Arkansas Workers' Compensation Commission denying his claim for benefits on the ground that he was not performing employment services at the time of his injury. Appellant was employed by appellee, the City of Fort Smith, as a dump-truck driver for the street department. On May 2, 2000, appellant reported for work and spent the day transporting refuse from a temporary dump to the city landfill in a truck owned by appellee. At the time of the occurrence, appellee maintained a temporary dump in the back yard of a city shop facility that was appellant's base. The dump was a temporary location for limbs, dirt, gravel, and other debris removed from drainage ditches. The refuse was periodically moved from the temporary dump to the city landfill by street department employees on days when the weather was not conducive to them performing their regular tasks. At the time of the incident, appellee permitted its employees to remove and use the refuse for their personal use.[1]

---

[1] This policy was changed subsequent to appellant being injured and filing a claim

The accident that is central to this case happened near the end of appellant's work shift[2] when he was loading some old "waste" gravel into his own dump truck to take home and spread on his driveway. The accident occurred when appellant saw a concrete block that he did not want in the gravel being loaded into the truck by the driver of the front-end loader. Appellant climbed up the side of his personal truck to retrieve the concrete block when he slipped and caught himself with his left arm, injuring his shoulder. Appellant admitted that the exact task he was engaged in at the time of the accident involved throwing something he did not wish to take, specifically the concrete block, back onto the refuse pile.

Appellee initially accepted the claim as compensable and paid benefits, but later denied compensability and asked for an award against appellant for all benefits previously paid. The administrative law judge subsequently found appellant's claim to be compensable and awarded permanent partial disability at forty-four percent. Appellee appealed to the full Commission, and appellant cross-appealed seeking permanent and total disability.

The Commission issued its decision on February 21, 2003, denying compensability because at the time of the accident appellant was loading gravel into his own truck to take home to spread on his driveway, and more specifically, was attempting to throw back a concrete block he did not want for his personal use, thus he was not performing "employment services."

▅ In reviewing decisions from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Daniels v. Arkansas Waffles, Inc.,* 83 Ark. App. 106, 117 S.W.3d 653 (2003). Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.* When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence,

---

against the city, and employees are no longer allowed to haul away gravel for their own personal use.

[2] Appellant's injury occurred a little more than thirty minutes before his shift was to end, and he was still "on the clock" at the time of the accident.

the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.*

As the claimant, appellant had the burden of proving a compensable injury by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E)(i) (Repl. 2002). Arkansas Code Annotated section 11-9-102(4)(A) (Repl. 2002) provides that "compensable injury" means "an accidental injury causing internal or external physical harm ... arising out of and in the course of employment .... An injury is 'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]" Employment services are performed when the employee does something that is generally required by his or her employer. *Collins v. Excel Spec. Prod.,* 347 Ark. 811, 69 S.W.3d 14 (2002). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *Daniels, supra.* The test is whether the injury occurred "within the time and space boundaries of employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interests directly or indirectly." *Id.*

Appellant argues that the test for employment services was met in this case. He states that the injury occurred during normal working hours at the appellee's shop facility, and accordingly, the temporal and spatial boundaries of the test are met. The injury occurred when appellant was loading waste gravel for transport away from the temporary location, which appellant claims was: (1) directly advancing appellee's interests; (2) generally required by appellee; (3) an inherently necessary part of his job.

Appellant claims that the Commission erred in finding that the task being performed by him at the time of the injury only benefitted appellant. He argues that appellee's waste disposal burden was lessened while he benefitted by filling potholes in his driveway. Appellant asserts that if he had not loaded the gravel to take home with him, appellee would have had to have another employee take it to the land fill.

Appellant also cites as error the finding by the Commission that the task performed was not inherently necessary for his job performance. He states that both parties had witnesses who testified that hauling waste gravel from the temporary dump to the

landfill was a normal part of the occupation to be conducted on rainy days when other activities could not be accomplished. He argues that the fact that the final destination of the waste gravel was his driveway is of no importance. Appellant also states that putting waste on the pile, specifically throwing a concrete block back onto the pile, is an inherent part of his job and is exactly what he was doing at the time of the injury. Appellant maintains that even if the Commission was correct in finding that throwing the concrete block back onto the pile was not an inherent part of his job, it was merely "incidental" to his primary activity of loading waste.

Appellee discusses several cases that state the rules for deciding when an employee is performing "employment services." In *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999), our supreme court held that when an employee is doing something that is generally required by his or her employer, the claimant is providing employment services. In *White*, the supreme court emphasized that the employer compelled the claimant to be in the circumstances in which he found himself at the time of the accident. In the instant case, although removing the refuse from the temporary dump to the landfill was at times generally part of appellant's job, appellee never compelled him to remove the waste for his own benefit, much less climb up the side of his personal vehicle to remove unwanted waste objects like the concrete block.

In *Collins v. Excel Spec. Prod., supra,* the claimant left the production line in a meat processing plant to use the restroom. On her way, she fell and broke her arm. The supreme court relied on the same principles, citing *White, supra*, to find that claimant's taking a restroom break was a necessary function and directly or indirectly advanced the interests of her employer. Likewise, in *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002), the supreme court concluded that a restroom break was both a necessary function *and* directly or indirectly advanced the interests of the employer.

Along the same line, in *Olsten Kimberly Quality Care v. Petty*, 328 Ark. 381, 944 S.W.2d 524 (1997), a nurse's assistant whose job required her to care for patients in their homes was injured in an automobile accident that occurred en route from her employer's office to a patient's home. The claim was deemed to be compensable after the supreme court determined that travel, although an incidental activity, was an inherently necessary part of her employment. To the contrary, in *Harding v. City of Texarkana*, 62 Ark. App. 137, 970 S.W.2d 303 (1998), a claimant was denied com-

pensation when she tripped over a rolled-up carpet while walking to a designated smoking area. The court reasoned that "although appellant's break may have indirectly advanced her employer's interests, it was not *inherently necessary* for the performance of the job she was hired to do." *Id.* at 139, 970 S.W.2d at 304 (emphasis added).

While the removal of the waste by appellant may have advanced appellee's interests, at least indirectly, the removal of it for his own personal use was not inherently necessary to his job. He could have spent the time removing it in appellee's truck as he had been doing all day, and would not have been climbing up the truck to remove any specific waste he did not want. Under the usual scope of his duties, it would all have been taken to the landfill. As appellee points out, it also was not necessary at the time and place of the occurrence for appellant to have been loading gravel at all. It was near the end of the shift and no additional loads were going to be hauled to the landfill that particular day. It certainly was not a necessary function for appellant to be loading the gravel for his personal use.

■ There is evidence to support appellee's argument that appellant may have realized how tenuous his claim was because of the way he filled out Form N reporting the accident. He filled it out the day following the accident and indicated that the injury occurred "while getting out of [the] *City* vehicle, caught self with arm, pulled shoulder out." (Emphasis added.) The fact that appellant's own injury report form incorrectly states that the accident involved a city vehicle rather than appellant's personal vehicle casts doubt upon his credibility. The determination of the credibility and weight to be given a witness's testimony are within the sole province of the Commission. *Farmers Coop. v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002).

■ Although at the time of his injury appellant was engaging in an activity that benefitted appellee to some extent, in order to be compensable the activity must also have been inherently necessary for the performance of his primary job activity. *See Harding, supra.* Whether or not an employee is performing employment services is a factual determination to be made by the Commission. Under our standard of review, we find that the Commission's decision that appellant was not performing employment services at the time of his injury is supported by substantial evidence.

Affirmed.

NEAL and CRABTREE, JJ., agree.

BIRD, J., concurs.

HART and GRIFFEN, JJ., dissent.

SAM BIRD, Judge, concurring. I agree that the Commission should be affirmed because substantial evidence exists to support its finding that appellant was not performing employment services when he was injured. I write separately because I am unable to agree with the majority opinion's assertion that "the removal of the waste by appellant may have advanced appellee's interests, at least indirectly . . . ."

I find nothing in the record that supports even the suggestion that appellee's interests were advanced by appellant's removal of the waste. For all practical purposes, appellant's workday was over because there was not sufficient time remaining to perform any significant employment tasks. Instead, appellant pulled his personal truck onto appellee's property, used appellee's equipment to load his truck with waste material that appellee gratuitously permitted appellant to remove, and was injured in the process. If anything, appellant's use of the appellee's time and equipment for personal gain was adverse to appellee's interests.

JOSEPHINE LINKER HART, Judge, dissenting. As noted in the majority opinion, under our workers' compensation law, a "compensable injury" is defined as "[a]n accidental injury ... arising out of and in the *course of employment*...." Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2003)(emphasis added). However, a compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when *employment services* were not being performed...." Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 2003)(emphasis added). While "course of employment" and "employment services" are not defined in the statutes, the Arkansas Supreme Court recently equated the two phrases. The supreme court stated that it uses "the same test to determine whether an employee was performing 'employment services' as [it does] when determining whether an employee was acting within 'the course of employment.'" *Pifer v. Single Source Transp.*, 347 Ark. 851, 857, 69 S.W.3d 1, 4 (2002) (citing *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524

(1997)); *Collins v. Excel Specialty Prod.*, 347 Ark. 811, 817, 69 S.W.3d 14, 18 (2002) (citing the same cases). According to *Pifer* and *Collins*, "[t]he test is whether the injury occurred 'within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's· interest directly or indirectly.'" *Id.* The supreme court overruled all prior decisions of this court to the extent that they conflicted with *Pifer* and *Collins. Pifer*, at 859, 69 S.W.3d at 5; *Collins*, at 819, 69 S.W.3d at 20.[1]

While the majority states that this is the test, it does not then apply the test. After applying this test, I must conclude that appellant was performing employment services. As the majority notes, on the day of his injury and as was "generally part of appellant's job," appellant reported for work and spent the day removing debris from appellee's temporary dump site on appellee's property to the city landfill. As also noted by the majority, appellee permitted employees to remove the debris and use it for their own benefit; thus, appellee did not require that the debris had to end up at the landfill. Further, as the majority notes, appellant was still "on the clock" at the time of the accident. Therefore, while operating within the time and space boundaries of his employment, appellant was injured while carrying out appellee's purpose or advancing the employer's interest directly or indirectly by removing debris from appellee's property.

While the majority states that "appellee never compelled [appellant] to remove the waste for his own benefit," I note that removal of the debris was part of his job, and appellee permitted

---

[1] The fulcrum on which the majority's decision totters, the case of *Harding v. City of Texarkana*, 62 Ark. App. 137, 970 S.W.2d 303 (1998), is of doubtful precedential value. In denying benefits, the *Harding* court, rather than reckoning the phrases "course of employment" and "employment services" as equal, considered them as if they stood in opposition. Further, the *Harding* court affirmed the denial of benefits even while acknowledging that the employer's interests may have been indirectly advanced. *Harding*, at 139, 970 S.W.2d at 304. All of this conflicts with the test set out in *Pifer* and *Collins*, which, as stated above, asks whether the injury occurred when the employee was advancing the employer's interests, directly or indirectly. And as noted above, our supreme court overruled all prior decisions of this court to the extent that they conflicted with *Pifer* and *Collins*. Further, I also note that the majority cites to *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997), which the majority says stands for the proposition that a claim is compensable when the claimant's incidental activity is an inherently necessary part of her employment. That case, however, does not mandate that only inherently necessary conduct is compensable. In *Pifer* and *Collins*, the test is otherwise.

removal of the debris for personal use. The test set out in *Pifer* and *Collins* asks whether the injury occurred when the employee was advancing the employer's interests, directly or indirectly. Hence, the majority's denial of benefits is ironic in that it acknowledges that "the removal of the waste by appellant may have advanced appellee's interests, at least indirectly," and that "appellant was engaging in an activity that benefitted appellee to some extent."

The majority also states that appellee did not compel appellant to discard "unwanted waste objects" from his personal truck. I note further that the majority makes much of appellant's use of his own truck for the permitted removal of debris for his personal needs, suggesting that he could have used appellee's truck to take the debris to the landfill. This ignores the fact that appellee permitted the debris to end up somewhere other than the landfill. And I ask, rhetorically, how else could appellant have removed the debris for his permitted personal use? By hand? By using appellee's truck? Surely, permission to remove the debris implied permission to remove the debris wanted by the employee by some practicable means available to the employee.

Also, the majority states that appellant "was near the end of the shift and no additional loads were going to be hauled to the landfill on that particular day." This ignores appellee's associated benefit from appellant's continued work. The quoted language seems to suggest that denial of benefits was appropriate because appellant continued to remove the debris before his shift ended, leading one to conclude that the majority is denying benefits because appellant did not knock off early.

Based on the applicable law and relevant facts, I cannot reach any other conclusion than that appellant's removal of debris from appellee's temporary dump site during work hours constituted employment services and that the accident arose in the course of employment.

I respectfully dissent.

GRIFFEN, J., joins in this dissent.