

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-16-389

| | |
|---|---|
| USA TRUCKS, INC.<br>BROADSPIRE SERVICES, INC.<br>APPELLANTS<br><br>V.<br><br>JAMES JARRELL<br>APPELLEE | **Opinion Delivered** October 19, 2016<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G409263]<br><br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

USA Truck, Inc. and Broadspire Services, Inc., (collectively "USA Trucks") appeals the Arkansas Workers' Compensation Commission's order adopting and affirming the administrative law judge's (ALJ) finding that appellee James Jarrell suffered a compensable injury. We affirm.

In 2014, Jarrell applied for a truck-driving position with USA Trucks and attended the company's truck-driving school in Fort Wayne, Indiana. He obtained a commercial driver's license and was directed by USA Trucks to go to Van Buren for a two-day orientation, which he did. He left the orientation with a "training driver" with whom he drove to Colorado and back to Arkansas. While on the road, the two men slept in the sleeper berth of the truck, although the trainer told Jarrell that, if he didn't want to sleep in the truck, he could get a hotel room at his own expense.

After the training trip to Colorado, USA Trucks arranged for Jarrell to take a bus to Memphis for additional training, which he did. As soon as Jarrell arrived at the West Memphis

bus terminal, his new trainer took him to Wal-Mart to buy groceries for their trip to begin the following morning. Later, the trainer instructed Jarrell on where to put his personal belongings in the sleeping berth of the truck, told him that the top bunk was Jarrell's, and told him that they needed to get to sleep because they were leaving for Texas early the next morning. Jarrell testified that the trainer never mentioned that he had any option other than sleeping in the truck and instead told him that they should sleep there so they could leave very early the following morning. Jarrell testified that he understood this as an instruction from the trainer.

In the morning, the trainer woke Jarrell up by instructing him to immediately conduct a pretrip inspection of the truck. Jarrell climbed down from the top bunk and inadvertently stepped into a crock pot full of hot water, causing severe burns to both of his feet. He was transported to the hospital by ambulance. Jarrell testified that he was climbing out of the bunk bed to get dressed in order to conduct the inspection as instructed by the trainer. He noted that he was required to keep an accurate log of his on-duty and off-duty time and that he was not permitted to log any on-duty time until he was dressed and ready to work. He admitted that he had not yet logged any on-duty time in the truck when he was hurt.

Jarrell filed a claim with the Commission, alleging that he had suffered a compensable injury. Appellants denied that his injury was compensable, arguing that he had not been performing employment services at the time of his injury. The ALJ found that Jarrell had been instructed to sleep in the truck so that the two men could leave early the next morning and that by sleeping there he had advanced his employer's interest. USA Trucks then appealed to the Commission, which adopted and affirmed the ALJ's opinion.

SLIP OPINION

In reviewing Commission decisions, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirm it if it is supported by substantial evidence. *Hill v. LDA Leasing, Inc.,* 2010 Ark. App. 271, 374 S.W.3d 268. Substantial evidence exists if reasonable minds could reach the Commission's conclusion, and we will not reverse unless fair-minded persons could not have reached the same conclusion when considering the same facts. *Id.* We will reverse if the Commission's decision is based on an incorrect application of the law. *Id.*

The only issue presented by USA Trucks in this appeal is whether Jarrell was performing employment services at the time of his injury. In *Razorback Concrete v. Perkins*, 2015 Ark. App. 368, at 2, 465 S.W.3d 15, 16, we explained:

> A compensable injury is one that arises out of and in the course of employment, but it does not include one that is inflicted on an employee at a time when employment services are not being performed. *Wallace v. W. Fraser South, Inc.,* 365 Ark. 68, 225 S.W.3d 361 (2006).

> The Workers' Compensation Act does not define the phrase "in the course of employment" or the term "employment services." *Id.* Our supreme court has taken on the task of defining these terms in a manner that is compliant with the strict construction required of the Act. *Id.* Since 1993, the supreme court has held several times that the test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id.* This inquiry depends on the particular facts and circumstances of each case. *Texarkana Sch. Dist. v. Conner,* 373 Ark. 372, 284 S.W.3d 57 (2008).

Appellants argue that our case law has previously established that off-duty truck drivers who are injured while performing "routine personal grooming and related tasks" upon arising in the morning (showering, going to the bathroom) are not performing employment services and their injuries are, therefore, not compensable. *See Cook v. ABF Freight Sys., Inc.,* 88 Ark. App. 86, 90, 194 S.W. 3d 794, 797 (2004); *Kinnebrew v. Little John's Truck, Inc.,* 66 Ark. App. 90, 92,

989 S.W.2d 541, 543 (1999). The following excerpt from *Cook* is helpful in understanding the

two cases:

> However, in *Kinnebrew v. Little John's Truck, Inc.*, 66 Ark. App. 90, 989 S.W.2d 541 (1999), this court affirmed the Commission's decision that a shower is not inherently necessary for the performance of the job a trucker was hired to do. In *Kinnebrew*, *supra*, the appellant, a truck driver, had stopped over at a rest stop for his eight-hour rest. While at the truck stop, the appellant cleaned his truck, washed laundry, and took a number for the shower facility. When a shower became available, he entered the stall, slipped and fell onto a slippery substance. The court held that the appellant was not performing employment services when he was injured while taking a shower while off duty. The court stated that showering is not inherently necessary for the job he was hired to do, and that the performance of such personal tasks, even while on the employer's premises, was not performing employment services under Act 796 of 1993.

> In this instance, there was no evidence that Cook's entry into the bathroom was for any reason other than to attend to his own personal needs. While the supreme court held in *Pifer* that the use of "toilet" facilities while at work is a necessity and that an employee who is injured while using the toilet during working hours is performing employment services, the case before us is readily distinguishable from *Pifer*, *supra*. Here, Cook was "off the clock" and taking a mandated eight-hour overnight rest break when the accident occurred. There is no suggestion in the record that his planned use of the bathroom upon arising at 7:30 a.m. in the morning in question was in any respect different from his routine morning preparations, whether he was on the road or at home. We thus conclude that the facts of this case are most analogous to *Kinnebrew*, *supra*, and that the performance of routine personal grooming and related tasks upon arising in the morning, even under the circumstances present in this case, is not the performance of employment services for the purposes of compensability.

*Cook*, 88 Ark. App. at 90–91, 194 S.W.3d at 797.

The present case is distinguishable from *Cook* and *Kinnebrew*. First, unlike in those cases,

Jarrell was a trainee, was required to follow his trainer's instructions, and was specifically

instructed to sleep in the truck so that they could leave early the next morning. Sleeping in the

truck was required and was done for the employer's benefit. Moreover, unlike in *Kinnebrew* and

*Cook*, at the time of the injury Jarrell was not performing routine personal-grooming tasks as

he would have done upon arising in the morning regardless of where he slept. Here, Jarrell

had been awakened by his trainer and specifically instructed to perform a pretrip inspection of the truck. He was injured as he followed that instruction.

USA Trucks argues that our previous holdings indicating that "the relevant inquiry" is specifically "what [the claimant is] doing *at the moment of his injury*" mandate reversal because, even if Jarrell was following the trainer's instruction to conduct a pretrip inspection, what he was doing at the moment of injury was simply getting out of bed. *Gaskins v. Jeff Minner Trucks*, 2010 Ark. App. 471, at 6 (emphasis added). Even under such a narrow inquiry, Jarrell was performing employment services at the moment of his injury. Jarrell was stepping down from the top bunk, where he had been required to sleep by his employer, to initiate employment services (an inspection of the truck) at the direction of his trainer. While he was not yet on the clock and could not log any on-duty hours until he got out of bed and got dressed, the fact that the injury occurred while stepping out of bed does not automatically mean that Jarrell was "performing personal grooming and related tasks" as described in *Kinnebrew* and *Cook*.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *R. Scott Zuerker* and *Joseph Karl Luebke*, for appellant.

*Mark I. Baretz*, for appellee.